1  Mark T. Clausen, Esq. (Calif. SB # 196721)
   Law Office of Mark T. Clausen
2  391 Pollard Way
   Windsor, CA 95492
3  Telephone: (707) 235-3663
   Facsimile:  (707) 542-9713
4  Email:  MarkToddClausen@yahoo.com

5  Attorney for Defendant DAVID MISHLER

6              UNITED STATES DISTRICT COURT

7            NORTHERN DISTRICT OF CALIFORNIA

8               SAN FRANCISCO DIVISION

9  UNITED STATES OF AMERICA,              Case No. 19-00105-RS

10      Plaintiff,                         DEFENDANT DAVID MISHLER'S
                                           SENTENCING BRIEF
11  vs.
                                           Sentencing Date: 9/10/19
12  DAVID MISHLER,                         Time: 2:30 p.m.
                                           Judge: Hon. Richard Seeborg
13      Defendant.                         Location: Courtroom 3, 17th Floor
   _____/                  455 Golden Gate Ave.
14                                                   San Francisco, CA

15  I.   **Introduction.**

16      Defendant David Mishler, by and through his counsel of record, respectfully submits this

17  sentencing brief concurring in the sentencing recommendations by Probation and by the

18  Government—which has also filed a sentencing brief concurring with Probation's

19  recommendations.   However, with regards to the recommendation of a prison sentence of 1-year

20  and 1-day, Mr. Mishler respectfully requests that the Court consider in-home confinement as an

21  alternative to prison in order to reduce the harmful impact on Mr. Mishler's wife and their 7-

22  year-old daughter who depend on him for financial support and care and companionship, and in

23  order to allow Mr. Mishler the opportunity to work from home—if permitted within restrictions

24  imposed by the Court and by Probation—so that during his period of confinement he will have

25  some measure of income to support his family and help pay his sizeable restitution obligation of

26  $582,124 (the amount recommended by Probation and by the Government and now concurred in

27  by Mishler).

28      To address restitution, Mr. Mishler has already cashed out his retirement savings of

approximately $140,000.  After using those funds to pay about $30,000 in tax penalties for early withdrawal and to pay his attorneys fees, he is prepared to immediately tender the sum of $110,000 as payment toward his restitution obligation.  Mr. Mishler also has an adult daughter and two adults sons from his first marriage, and his sons have liquidated their savings to provide funds to Mr. Mishler to help support his wife and 7-year-old daughter during his period of confinement.  Those funds could also be used to help pay the restitution obligation, if Mr. Mishler sentence puts him in position to dip into those funds for that purpose.

**II.**    **Statement of Facts.**

The Probation report and the Government's sentencing brief accurately recite the facts relating to Mr. Mishler and to his crimes.  Mr. Mishler was presented with a "crime of opportunity" by his now co-defendant, Erich Schoenwisner, through a scheme to defraud Mr. Mishler's employer, Hilton SFO hotel, by creating and signing fraudulent purchase orders for products sold by Schoenwisner—a scheme which Schoenwisner was then engaged in with others involved in the hotel business in the Bay Area, and he continued to engage in for many more years until the entire scheme was detected by authorities.  The purchase orders either overstated the number of products actually delivered by Schowenwisner or overstated the price of those products, or both, thereby allowing Schowenwisner to turn an illicit profit.  Schowenwisner and Mischler equally splitting the illicit profits—after Schowenwisner took the first 10% for  himself for the ostensible purpose of paying his tax obligations for his share of the illicit profits (an irony that cannot be overlooked given the tax fraud charges to which they have now both pleaded guilty in this case).

Mr. Mishler jumped at the opportunity to make "a few extra dollars" at his employer's expense, without fully and fairly considering the illegality of the scheme and its moral failings and the harm to his employer and others, and the harsh consequences that would follow if the scheme was ever detected—which was destined to happen eventually because such schemes rarely go undetected forever and this particular scheme was rather obvious upon examination of

the falsified purchase orders.  "A few extra dollars" for Mishler and Schowenwisner soon became a few thousand dollars, then tens of thousands, then hundreds of thousands, and ultimately $582,124 over the course of the 5 year span in which the scheme was operational in 2012-2017.

Mishler and Schowenwisner got away with their fraudulent scheme for so long because Mr. Mishler was in a position of trust as head of maintenance for Hilton SFO and his employer and his co-workers and superiors trusted him to be honest and did not subject his purchase orders to independent examination and auditing of a nature that normally results in detection of such schemes.  In other words, as Mr. Mishler now readily acknowledges, he abused his position of trust for purposes of illicit profit and took advantage of the co-workers and superiors who trusted his character and good judgment—undeservedly we now know, and Mishler knew all along.

Each time Mr. Mishler received money (cash) from Schowenwisner in payment of Mishler's share of the fraudulent scheme—which was once or twice a month on average—Mishler deposited the money in his bank account (minus the occasional small expenditure of some of the cash) and used the money to pay for his and his family's living expenses.  Mr. Mishler's wife and 7-year-old daughter were entirely unaware of the fraudulently money-making scheme, as were Mishler's 3 adult children from his first marriage.  They had no reason to suspect wrongdoing because Mr. Mishler worked 50+ hours per week on average and with overtime he (lawfully) took home over $200,000 per year before taxes.  They also trusted Mishler—their husband or father—and he took advantage of their trust, just as he took advantage of the trust of his employer and his co-workers and superiors at Hilton SFO.

As these stories so often go, the money making scheme came to the attention of authorities after other individuals caught wind of the scheme and wanted in on the action but were not paid enough by Schowenwisner to permanently buy their silence.  An examination of the fraudulent purchase orders and other documentation, including bank records, allowed the Government (specifically IRS investigators and prosecutors at the DOJ) to determine the general

3

nature and duration of the scheme and the estimated amount of money involved—but, like any investigation of this nature, there were still missing pieces to the puzzle that required further inquiry and scrutiny by the Government.  This lead the Government to confront Mr. Mishler about the fraudulent scheme.[1]

As *often* occurs in these situations, Mr. Mishler was not immediately forthcoming when he first spoke with IRS investigators at his home—he denied involvement in or knowledge of the criminal scheme.  But, as *rarely* occurs in these situations, Mr. Mishler quickly came to his senses and retained counsel, who promptly contacted the Government and made arrangements for an in-person meeting between Mishler and IRS investigators and DOJ prosecutors.  The meeting occurred just 1 week after Mr. Mishler was initially confronted at home by the IRS investigators.  During the meeting, Mishler explained that he had not initially "come clean" with the investigators because he was afraid that if he told them the truth, he would be immediately arrested as he stood on the front porch of his house, just a few feet away from his 7-year-old daughter who was inside the home waiting for her father to return from his "talk with the men." Mishler went on to candidly acknowledge his involvement in the scheme as more completely detailed in the Probation report and the Government's sentencing brief.  He did so without any promises or inducements from the Government—in fact, he was advised by the Government that he *could be* criminally charged and his attorney told him he *definitely* would be charged for his participation in the scheme.

As expected, the Government soon filed criminal charges against Mr. Mishler (and Schowenwisner).  Mishler promptly acknowledged guilt and reached agreement with the

---

[1]The Government also confronted Schowenwisner, who has since entered a guilty plea in this case and is now awaiting sentencing.  The Probation report and the Government's sentencing brief generally discuss co-defendant Schowenwisner's involvement.  For purposes of this sentencing brief by Mr. Mishler, he will focus on his own involvement and put Schowenwisner's involvement to one side.  And, deserving more than a footnote, Mr. Mishler wishes to emphasize that he does not blame Schowenwisner for his (Mishler's) participation in the fraudulent money-making scheme and his concurrent predicament in this criminal case—Mr. Mishler knows that he did this to himself and he has no one to blame for it but himself.

4

Government on a plea deal which included a general sentencing range but no promises about the actual sentence which would be imposed by the Court.  Mr. Mishler has remained free of custody on an unsecured bond and he has dutifully complied with all conditions of his pre-sentence release as imposed by the Court and by Probation.  He has timely appeared for court on all dates scheduled thus far and he has likewise timely met with Probation and stayed in regular contact with Probation by phone and email, and the same is true with regards to his meetings and communications with his attorney— which is not always the case with defendants in similar circumstances.  In sum, Mr. Mishler has been a "model defendant." But he wishes he were instead a "model citizen"— and he would be if he had the ability to turn back the clock and make the right decisions rather than the wrong ones which lead to him to being charged as a defendant in the first place.

Mr. Mishler's exclusive concern as he enters the sentencing phase is the affect his sentence will have on his wife and their 7-year-old daughter.  Mr. Mishler's acknowledges and appreciates the recommendation by Probation and by the Government of a prison sentence of just 1-year and 1-day, which he understands is a significant downward departure from the type of sentencing recommendation generally made in cases like this.  Mr. Mishler is prepared to serve that sentence or any other prison sentence that the Court may deem fit to impose.  But he respectfully asks the Court to consider in-home confinement or other alternatives to prison, in order to reduce the impact his sentence will have on his wife and their young daughter.

**III.    Sentencing Analysis.**

Mr. Mishler concurs in the sentencing analysis by Probation in its report and by the Government in its sentencing brief.  Given this consensus, Mr. Mishler does not see need to further address the sentencing factors in this brief.  Mr. Mishler and his counsel will be prepared to address those factors as necessary at the time of sentencing.

However, as noted earlier, Mr. Mishler does respectfully request that the Court consider allowing him to serve his prison time via in-home confinement or other alternative custodial

5

setting, in order to reduce the impact his sentence will have on his wife and their young daughter.   Mr. Mishler is willing and able to abide by all conditions which the Court or Probation may be see fit to impose as a condition of in-home confinement.  And, in the event in-home confinement is denied, Mr. Mishler respectfully requests the Court to order that he be confined in the prison facility nearest his home in Sonoma County, in order to afford his wife and children the opportunity to visit him as often as possible while he is in custody.  Experience shows that inmates who are supported and visited by their family while incarcerated generally tend to perform better when released.  Mr. Mishler has no intention of reoffending or violating his probation terms upon release from prison (or upon grant of in-home confinement), but his ability to weather the storm in times of trouble would be greatly enhanced if he enjoys the support and close-contact of his family while serving his sentence.

**IV.    Restitution.**

Mr. Mishler concurs in Probation's and the Government's joint recommendation of an order of victim restitution in the amount of $582,124— with $509,124 payable to Mishler's former employer, Hilton SFO, and $73,351 payable to the IRS.  Mr. Mishler did not receive the full $509,124 stolen from his employer— his co-defendant, Schowenwisner, received about 60% of those funds as his share of the illicit profits.  Mr. Mishler is concerned that Schowenwisner will not pay, or will not *timely* pay, his "share" of the restitution obligation, but Mishler understands that the obligation is joint and several as between the two of them, and, therefore, Mishler must pay the full amount of the obligation in the event that Schowenwisner fails to pay anything to satisfy the obligation.   Mr. Mishler is prepared to that if he must—but payment of the full burden of the $509,124 restitution obligation would be very hard on him and his family.

Mr. Mishler is prepared to make an initial restitution payment of $110,000 immediately after his sentencing, using funds remaining from the $140,000 retirement account that he cashed out after his criminal prosecution and his restitution obligation came into focus.  He has used about $30,000 of those funds to pay early withdrawal penalties and taxes and attorneys fees.  He

1  is now prepared to tender the balance (roughly) of $110,000 to reduce his restitution debt.

2  <u>**CONCLUSION**</u>

3  Mr. Mishler sincerely thanks the Court and its staff, the Probation Department and its

4  staff, and the Government and its agents, including the DOJ and the IRS, for their respectful

5  treatment of Mr. Mishler throughout this process and for their careful consideration of the facts

6  underlying this case which has lead to the thoughtful sentencing recommendations by Probation

7  and by the Government, in which Mr. Mishler has concurred.

8  Mr. Mishner comes before the Court a guilty man, contrite for his criminal conduct and

9  the harm it has caused—and continues to cause—his former employer, Hilton SFO, and his

10 former co-workers and superiors, and his own family, as well as the Government and its citizens.

11 Mr. Mishler is sincere in his apologies for his actions and is repentant in his behavior.  Mr.

12 Mishner will accept the sentence of the Court and will timely and properly fulfill all of his duties

13 and obligations under the terms of the sentence, including payment of restitution and well-

14 behaved service of any prison term imposed requiring actual custodial time.  He fully

15 understands and appreciate the grace extended to him thus far by the Government which has

16 resulted in a recommended sentence of just 1-year and 1-day in prison.  Mr. Mishler asks only

17 that the Court consider in-home confinement or other prison-alternatives in deference to his wife

18 and their 7-year-old daughter who rely heavily on him for financial support and love and

19 companionship; and if in-home confinement is denied, then he respectfully asks for a prison

20 commitment to the federal facility nearest his home in Sonoma County so that his family may

21 visit him as often as possible while he is serving his prison term.

22                                    Respectfully Submitted,

23 Date: September 4, 2019          By: <u>/S/ *Mark T. Clausen, Esq.*</u>
                                         Mark T. Clausen, Esq.
24                                       Attorney for Defendant David Mishler

25

26

27

28                                          7

## PROOF OF SERVICE BY EMAIL

I, Mark T. Clausen, do hereby declare:

1. I am the attorney of record for Andrew Davis. I am over the age of 18 and I am not a party to this action. My business address is Law Office of Mark T. Clausen, 391 Pollard Way, Windsor, CA 95492.

2. On September 4, 2019, I served the attached *Sentencing Brief* through the Court's e-filing and e-service system, and also by direct email, to:

JOSE A. OLIVERA                                     Attorney for Plaintiff U.S.A.
Assistant United States Attorney
1301 Clay Street, Suite 3405
Oakland, California 94612
Email: jose.olivera@usdoj. gov

Alena Kokich                                        Probation Services
Probation Services Assistant
U.S. Probation
Northern District of CA
450 Golden Gate Ave.
San Francisco, CA 94102
Email:  Alena_Kokich@canp.uscourts.gov

I hereby declare that the foregoing is true and correct under penalty of perjury of the laws of the State of California. So declared this 4th day of September 2019 in Windsor, California.

                    /S/ *Mark T. Clausen*
                    Mark T. Clausen